O–W–R OIL COMPANY, A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78755. Promulgated February 10, 1937.

*W. B. Harrell, Esq.,* for the petitioner.
*Eugene Smith, Esq.,* for the respondent.

OPINION.

LEECH: This proceeding asks redetermination of a deficiency of $3,942.81, determined by respondent for the calendar year 1932. The error assigned is the refusal of respondent to allow the deduction from gross income of $55,056.10, which petitioner has charged on its books as intangible drilling and development costs.

The parties stipulated the facts as follows:

[1.] The petitioner is a corporation organized and existing under the laws of the State of Texas, with its principal office and place of business in Dallas, Dallas County, Texas.

[2.] The taxes in controversy are income taxes for the year 1932 in the amount of $3,942.81.

[3.] In the year 1931, the petitioner entered into contracts with a drilling contractor for the drilling of four oil or gas wells on its oil and gas lease in Gregg County, Texas. These contracts were so-called "turn-key" contracts, that is to say, the contractor agreed to drill, equip and complete for petitioner these wells, and petitioner agreed to pay to the contractor for such completed wells the total sum of $83,119.32.

Petitioner filed the original return for 1932, claiming the whole $83,119.32 as loss. Later the petitioner segregated the tangible from the intangible items in said $83,119.32 and set up on its books $28,063.22 of said total as capital investment, and set up $55,056.10 of said total amount as intangible drilling and development costs, and made an amended income tax return for the year

1932, setting up $28,063.22 as capital investment and charging $55,056.10 as intangible drilling and development costs, and deducted said intangible drilling and development costs from its gross income.

[4.] It is agreed that under the contracts $28,063.22 is a reasonable and proper amount to charge for equipment, etc., having a salvage value, and that $55,056.10 is a reasonable and proper amount to charge for the intangible lease-hold and development costs having no salvage value.

Petitioner contends that, by the stipulation above set out, the respondent has agreed that the segregation of the tangible from the intangible items made by it on its books, of the total amount of $83,119.32, paid under contracts for completed wells, was correct and that the sum of $55,056.10 thus charged to intangible drilling costs was, in fact, the amount paid for such items. Upon this basis it is urged that respondent has admitted petitioner's compliance with article 236 of his Regulations 77.[1]

In *Old Farmers Oil Co.*, 12 B. T. A. 203, the identical question here was presented with the one exception that the respondent did not there admit that petitioner's allocation of the tangible and intangible drilling costs was "reasonable and proper." However, that decision was not premised upon the absence of such stipulated fact. In that case the petitioner, as here, had paid for the construction and equipment of certain oil wells under a so-called "turn-key" contract similar to the one here involved, that is, a contract providing for a lump sum payment to the contractor for a well completed and equipped. Petitioner on its books made an allocation of a certain part of the lump sum payment as constituting the cost to it of the intangible items. It then charged this amount to expense under a regulation of the respondent identical with that with which we are here concerned. Later petitioner sold the property and computed its profit upon a basis of cost which included the total amount paid under the turn-key contract, without adjustment for the portion thereof claimed and

---

[1] ART. 236 *Charges to capital and to expense in the case of oil and gas wells.*—* * *

(1) Option with respect to intangible drilling and development costs in general: All expenditures for wages, fuel, repairs, hauling, supplies, etc., incident to and necessary for the drilling of wells and the preparation of wells for the production of oil or gas, may, at the option of the taxpayer, be deducted from gross income as an expense or charged to capital account. Such expenditures have for convenience been termed intangible drilling and development costs. Examples of items to which this option applies are, all amounts paid for labor, fuel, repairs, hauling, and supplies, or any of them, which are used (A) in the drilling, shooting, and cleaning of wells; (B) in such clearing of ground, draining, roadmaking, surveying, and geological work as are necessary in preparation for the drilling of wells; and (C) in the construction of such derricks, tanks, pipe lines, and other physical structures as are necessary for the drilling of wells and the preparation of wells for the production of oil or gas. In general, this option applies only to expenditures for those drilling and developing items which in themselves do not have a salvage value. For the purpose of this option labor, fuel, repairs, hauling, supplies, etc., are not considered as having a salvage value, even though used in connection with the installation of physical property which has a salvage value. Drilling and development costs shall not be excepted from the option merely because they are incurred under a contract providing for the drilling of a well to an agreed depth, or depths, at an agreed price per foot or other unit of measurement.

*     *     . *     *     *     *     *

allowed as expense. In sustaining petitioner as to the cost basis used, we held that the allowance of the expense deduction was in error for the reason that petitioner had made no expenditures for intangible drilling costs, since under a contract of this character the total expenditure occurred in acquisition of a completed well and constituted a capital outlay in its entirety. It is clear that under this decision, the quoted regulation of the Commissioner has no application here.

That decision on this issue has been cited with approval by this Board in *Fort Ring Oil & Gas Co.*, 30 B. T. A. 307; and *C. W. Titus, Inc.*, 32 B. T. A. 1222. Our attention has been called to no contrary decision, by the courts or this Board.

We are aware of the expressions of the courts, in several cases, indicating that allocation of intangible drilling costs under "turnkey" contracts might be possible. *Ramsey* v. *Commissioner*, 66 Fed. (2d) 316; certiorari denied, 290 U. S. 673; *Twin Bell Oil Syndicate* v. *Helvering*, 70 Fed. (2d) 402; *Hughes Oil Co.* v. *Bass*, 62 Fed. (2d) 176. However, in none of these cases, we think, were such statements necessary to a decision therein. In any event, no sufficient reason is perceived why we should depart from the position of the Board in *Old Farmers Oil Co.*, *supra*. The stipulation that, after the completed wells were delivered and the contract price therefor paid, the petitioner's allocation of the aggregate payment, between tangible and intangible drilling expenses, was reasonable and proper, does not affect the rule there adopted that "* * * payments for completed wells are payments for capital assets." See *Helvering* v. *Seatree*, 72 Fed. (2d) 67, affirming 25 B. T. A. 396.

A necessary premise to any deduction of the contested amount as expenses is that such expenses be those of the taxpayer. *Seufert Brothers Co.* v. *Lucas*, 44 Fed. (2d) 528.

No actual segregation of tangible and intangible drilling expenses of the taxpayer, under such a contract, can be made. *Marshall C. Allaben*, 35 B. T. A. 327, and cases therein cited; *Old Farmers Oil Co.*, *supra; Fort Ring Oil & Gas Co.*, *supra; C. W. Titus, Inc.*, *supra.*

*Decision will be entered for the respondent.*